**D. C. FEDERATION OF CIVIC ASSOCIATIONS, INC., et al., Plaintiffs,**

v.

**Thomas F. AIRIS et al., Defendants.**

**Civ. A. No. 3174–66.**

United States District Court
District of Columbia.

Oct. 24, 1967.

See also D.C., 275 F.Supp. 533.

541

Robert B. Owen and Gerald P. Norton, Washington, D. C., for plaintiffs.

Patrick O'Donnell and John A. Earnest, Assts. Corporation Counsel for the District of Columbia and Thomas L. Mc-

Kevitt, Dept. of Justice, Washington, D. C., for defendants.

## OPINION

HOLTZOFF, District Judge.

In view of the fact that the pleadings and the motions in this action brought to enjoin the construction of several highways and a bridge in the District of Columbia, present numerous uncoordinated and disconnected issues, the Court has divided the consideration of the cross-motions for summary judgment into two parts. At the first hearing the Court heard arguments and considered those objections that were directed to the entire plan; or, more specifically, to all of the four projects attacked in this action. This hearing has been had, and the matters argued at the first hearing have been disposed of, both as to standing to sue as well as to the merits of the objections raised. The second hearing was held yesterday, and in this final stage there were argued specific objections to individual projects. The Court will take them up one at a time.

■ The first series of objections is directed against the construction of the bridge across the Potomac River, known as the Three Sisters Bridge. It is claimed in behalf of the plaintiffs that the District of Columbia is without any authority to construct bridges. This seems to be an astounding proposition, when the Court contemplates the numerous bridges throughout the limits of the District of Columbia. For example, there is a large number of bridges, large and small, across Rock Creek, a beautiful, serpentine stream that serenely and leisurely winds its way through the entire length of Washington. There are bridges over parks, depressed highways and railroad tracks. Some of them may be called viaducts, but they may be also properly denominated as bridges. A bridge is part of a highway. Authority to construct highways, by necessary implication, carries authority to construct bridges connecting with the highways. It is interesting to observe that the Federal Highway Act, Title 23 of the United States Code, Section 101, subsection (a), which contains definitions, defines the term "highway" as including roads, streets and parkways, and also as including rights-of-way, *bridges*, et cetera. [Emphasis supplied.] It is not necessary, however, to rest solely on this line of reasoning. The National Capital Planning Commission, which was established in 1952, as was discussed in the prior opinion, and which is clothed with the authority and invested with the duty of preparing, adopting and recommending plans for the development of the District of Columbia, is expressly authorized to include in its plans, among other things, highways, streets, *bridges*, viaducts, parkways, thoroughfares, and other facilities for the handling of traffic. Naturally the Commission would not have been authorized to develop plans for bridges unless, by implication, the District of Columbia was given authority to build them. The Court, therefore, concludes that there can be no doubt that the District of Columbia has power to build bridges.

■ The next objection raised against the Three Sisters Bridge is the contention that for part of the approaches a portion of the so-called Glover-Archbold tract is to be used. This land was conveyed to the city and accepted solely for use as park lands. This objection, however, need receive no further consideration, because the Corporation Counsel states that it is not intended to use any part of the land so dedicated for the approaches to the bridge, and his statement has not been denied or questioned.

■■ It is next urged that a part of the Chesapeake & Ohio canal is to be used for the approaches to the bridge, and that there is a contract between the United States and the Baltimore & Ohio Railroad, dated August 6, 1938, which, among other things, provides that the United States "will not use or permit to be used all or any part of the property herein referred to [i.e. parts of the Ca-

nal] for the conveyance of freight or passengers by land without the prior written consent of the Baltimore & Ohio Railroad Company". If there may be a breach of that contract in the erection of the Three Sisters Bridge, the only party that may complain is the Baltimore & Ohio Railroad, which may possibly maintain an appropriate action in this court. A taxpayer's suit does not lie to enjoin the municipality from violating a contract with a third party. The contention that the possible breach may lead to a claim for damages on the part of the other party to the contract is too remote to justify any basis for a taxpayer's suit to enjoin the breach. The fact that the contract is with the United States and not with the District of Columbia, makes this contention all the more remote. It has not been suggested that the Baltimore & Ohio Railroad will refuse to consent to the project or has threatened or indicated that it will bring suit to secure the performance of the contract. The Court overrules that objection.

■ The next objection directed against the construction of the Three Sisters Bridge is that a part of the approaches will comprise a portion of an area known as the Potomac Palisades, which was acquired by the United States solely for park purposes. It is contended that, having been acquired solely for park purposes, it may not be used for any other purpose. This aspect of the matter is governed by the District of Columbia Code, Section 8–115, which, in part, provides as follows:

"Federal and District authorities administering properties within the District of Columbia owned by the United States or by the said District are authorized to transfer jurisdiction over parts or all of such properties among or between themselves for purposes of administration and maintenance under such conditions as may be mutually agreed upon."

Perhaps the choice of the words "transfer jurisdiction" was not felicitous. It is obvious that the right to transfer properties as between the Federal and the District governments is not limited to the transfer of jurisdiction in the technical sense. The statute expressly states that the transfer may be made for purposes of administration and maintenance. These concepts are much broader than jurisdiction in the technical sense. The Court construes this section as meaning and comprising the right to transfer properties as between the United States and the District of Columbia not only as to jurisdiction over them, but also as to the purpose and use of the property. This construction is necessitated by the Congressional Committee reports. The House of Representatives Report No. 679, 72d Congress, First Session, which accompanied the bill that became the section just quoted, contained the following statement, in part:

"It cannot be doubted but that the enactment of this bill will result in a substantial saving of public funds. In the first place, it would make easier the most efficient use of land already owned by the government, and, secondly, it would avoid the purchase of additional lands when property now owned by the government might be transferred to a desired use."

In other words, it is clear that it was the intention of Congress, in enacting Section 115, to authorize not merely a transfer of jurisdiction in the technical sense, but also a transfer of property for a use that is different from that for which it had been previously employed. Under the circumstances, the Court reaches the conclusion that Section 8–115 authorizes the transfer of park lands for use in connection with the construction of the projects involved in this litigation.

■ There is one other objection advanced as to the bridge based on the provisions of the District of Columbia Code, Section 8–133, that there shall not be erected on any reservation, park or public grounds of the United States within the District of Columbia any building or structure without "express authority of Congress". That section was enacted

in 1912. Section 115 was enacted in 1932. Insofar as there may be any inconsistency between the two provisions Section 115 necessarily prevails. In other words, if land of the United States is transferred to the District of Columbia for a use different than that to which it was being put, Section 133 would not apply.

The Court, in conclusion, overrules the objections raised against the erection of the Three Sisters Bridge.

 We now pass to the three highways involved in this action; the North Central Freeway, the Missouri Avenue Expressway, and what is called the East Leg. The objection is interposed as against all three of these projects that park lands are to be taken in connection with their construction. What the Court has already said in connection with its discussion of the District of Columbia Code, Section 8–115, is equally applicable in this connection. Therefore, this objection is deemed to be without merit and is overruled.

■ An additional objection is directed against the East Leg, in view of the fact that as part of that highway a viaduct is to be built across the Baltimore & Ohio Railroad tracks. Plaintiffs' counsel rely on the Act of Congress approved August 9, 1935, which amended a prior Act on the same subject, 49 Stat. 568, 569. This Act prohibits the opening of streets or avenues across certain railroads. An examination of that Act, however, plainly indicates that the purpose of the statute was to prevent any further grade crossings. It is not to be construed as prohibiting the construction of a viaduct over railroad tracks. In other words, the words "across railroads" do not include a construction "over railroads". Manifestly there is no intention in this instance to create a grade crossing. In view of these considerations, the Court reaches the conclusion that this Act is not applicable and does not bar the construction of a viaduct over the tracks of the Baltimore & Ohio Railroad.

These conclusions dispose of all of the objections that have been advanced in behalf of the plaintiffs as against any of the four projects.

In the light of the opinion rendered a few days ago and this opinion, the final disposition of the case is as follows:

The complaint is dismissed for lack of standing to sue as against those defendants who are officers of the United States. It is dismissed as against those defendants who are officers of the District of Columbia as to all of the plaintiffs except those who are suing as taxpayers of the District of Columbia. The action may be maintained as against the District of Columbia officials by those plaintiffs—and those plaintiffs only—who sue as taxpayers of the municipality. The plaintiffs' motion for summary judgment is denied.

The cross-motion of the District of Columbia defendants for summary judgment is granted as against the plaintiffs who have standing to sue. The action is dismissed as to the other plaintiffs.

Counsel may submit an order accordingly.